Julius Frederick SPINDLER, Frank J.
Richards, etc., Appellants,

v.

UNITED STATES of America,
Appellee.

No. 19114.

United States Court of Appeals
Ninth Circuit.

Sept. 11, 1964.

Rehearing Denied Oct. 13, 1964.

Raymond Sutton, Babcock & Sutton, Las Vegas, Nev., Clete McCoy, Los Angeles, Cal., for appellants.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, Phillip W. Johnson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before HAMLEY, HAMLIN and BROWNING, Circuit Judges.

HAMLIN, Circuit Judge.

Julius F. Spindler and Frank J. Richards, appellants herein, and one Charles Rhodes (who did not appeal) were each convicted of fifteen counts of the violation of 18 U.S.C. § 1343 (1958) (fraud by interstate wire) by a jury in the United States District Court for the Southern District of California. Jurisdiction is conferred on this court by 28 U.S.C. § 1291 (1958).

The facts as shown by the record as to the various counts of the indictment are complicated. It was the theory of the prosecution that the guilt of the defendants below was established to the required degree by circumstantial evidence. There was evidence of many interstate telephone calls, as a result of which several finance companies or lending organizations who had made loans on automobiles were defrauded of various sums of money. The evidence disclosed that the pattern of operation was approximately the same as to the several counts. We shall set out an illustration of the general method used.

On August 31, 1962, one Dressel, assistant collection manager of the Spokane, Washington, office of Pacific Finance, received a telephone call from a person stating that his name was Jack Curtis, representing National Auto Recovery Service, 505 East Dunham, Hobbs, New Mexico. The alleged Curtis stated that National Auto Recovery had located a 1961 Dodge automobile belonging to Pacific Finance at Hobbs, New Mexico, and asked if Dressel wished them to pick up the vehicle and "if the fellow was behind or delinquent in his payments * * *" Pacific Finance was the legal owner of the Dodge. The registered owner was behind in his payments, so Dressel told the caller to pick up the car. On September 14, 1962, Dressel received another telephone call from the alleged Jack Curtis in which the alleged Curtis stated that there was a bid of $1350 for the vehicle. The next day Dressel sent a letter addressed to the National Auto Recovery Service, 505 East Dunham, Hobbs, New Mexico, authorizing the sale of the vehicle. When no money was forthcoming by October 2, 1962, Dressel sent a telegram to the Hobbs, New Mexico, address "asking where the money for the sale of the car was, that we hadn't received it, and I received a call stating that somebody by the name of Delaney, I believe, had been in an automobile accident, and this was

the reason we hadn't received our money, and that we would receive it in the near future, and that he had been in an accident down in Texas." The record shows that this Dodge automobile was sold on September 19, 1962, to a purchaser named Amsterdam in Hollywood, the sales price being $1,000. None of the proceeds of this sale was ever sent to Pacific Finance Company. This general pattern with some variations was shown to have occurred concerning many other automobiles.

The record showed that the Hobbs address was the address of Woodruff's Answering Service and that the telephone number of this answering service was the number given by the alleged Curtis in various telephone conversations. The answering service was in charge of Mrs. Woodruff who testified that she had had a telephone conversation with a "Jack Curtis" in which he said he wanted to use an answering service and also said he was the National Auto Recovery Service. She never personally saw Jack Curtis. However, "Curtis" would telephone the answering service periodically and ask if he had a letter or telegram. If there was a telegram, it would be read to him and he would give instructions as to the handling of the telegram and where to send the reply telegram. The answering service would send the reply telegram from Hobbs with "National Auto Recovery" and the Hobbs address as the only return address. When mail came to the answering service for National Auto Recovery it would be forwarded by the answering service to a post office box number in San Diego.

The record also showed that the various telephone calls to Dressel and others in similar positions did not originate in Hobbs, New Mexico, but that they actually came from two San Diego telephones referred to in the record as the "Park phone" and the "Linda Vista phone." During a one-month period there were twenty-seven telephone calls from the "Park phone" to Woodruff's answering service in Hobbs, and for the same period the closing telephone bill for that phone was over $1800 which was never paid. The "Park phone" had been obtained by the defendant Rhodes using the name of Kenny Idom. The Linda Vista phone was applied for by one "Edward L. Bates" having the address of "Hitching Post, El Cajon Blvd." Appellant Spindler was living at that motel under the name of Ed Bates and appellant Richards was seen there with Spindler during that time. Richards was also registered at the Hitching Post Motel and when he left defendant Rhodes moved in with Spindler. Spindler then had possession of one of the automobiles involved. Appellant Richards was involved in the sale of two of the automobiles and Spindler was involved in the sale of three of the automobiles. There was testimony that Richards had stated that "he was working for or was a partner of 'Jack Curtis' with the National Recovery Service." One Whaley testified that he had telephone calls from a person claiming to be Jack Curtis and that on various occasions Curtis gave him authorizations and instructions to repossess eight automobiles. Whaley testified that he did repossess the vehicles for the National Auto Recovery Service and turned them over to "Tommie" without requiring receipts. He had no telephone number or address for "Tommie." There was testimony that Spindler, Richards, and Rhodes had been seen frequently at the Park phone address and that they had used the telephone at that address. A witness testified that she told Rhodes "Your phone sure is busy all the time" and that Rhodes told her she wasn't supposed to know anything.

Spindler and Richards at various times had been in the auto repossession business and had contacts with many auto dealers. They contended they had dealings with "Curtis" concerning repossessions of automobiles and had assisted "Curtis" in the sale of some of the automobiles in question, and on occasion one or the other of them had received money from Curtis for services. The testimony of each of them was on occasion inconsistent with and contradictory

to that of the other and of other witnesses in the case. Richards had been twice previously convicted of a felony. Richards had stated that "he was working for, or was a partner of" Jack Curtis with the National Recovery Service. A witness testified that a person claiming to be Jack Curtis gave him the address of National Recovery Service as 932 North Western, Los Angeles, which was Spindler's office. We have not attempted to set out all of the testimony, but the foregoing is at least a partial summary and will suffice to understand the contentions of appellants.

■ In his opening statement to the jury the prosecutor stated that he expected to prove that a government witness had been threatened with death by defendant Rhodes if she testified against him. The prosecution was not able to prove this, because the court would not allow him to introduce this evidence upon the ground that it was too prejudicial. The prosecutor did not withdraw the remark and appellants now complain of this as prejudicial misconduct. The accusation was made against defendant Rhodes alone who is not an appellant here. Moreover, it would seem that if the prosecutor had spoken up on his own and offered to withdraw the statement, defendants' counsel would probably have been on their feet instantly to object on the theory that the reiteration of the contention would be more prejudicial than silence. In any event we see no error in this situation.

■ Appellants next complain that the admission of various telephone conversations between government witnesses in various parts of the country and a person who stated that he was Jack Curtis of the National Auto Recovery Service was in error. The district court instructed the jury that these conversations were not binding on the appellants unless they were connected up with the appellants and if they were not so connected they should be stricken and disregarded entirely. The government contends that by the circumstantial evidence properly admitted it was a question for the jury to determine whether or not they were chargeable to the appellants. We agree. We have set forth above some of the voluminous circumstantial evidence connecting appellants with the frauds that were committed, and we believe that there is abundant evidence in the record from which the jury could find that the appellants either made the telephone calls or knowingly and unlawfully aided and abetted the person or persons making them.[1] As stated in Carbo v. United States, 314 F.2d 718, 743 (9th Cir. 1963), cert. denied, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964):

"The connection between a telephone call and the caller may be established circumstantially. The issue for the trial judge in determining whether the required foundation for the introduction of the evidence has been established is whether the proof is such that the jury, acting as reasonable men, could find its authorship as claimed by the proponent. The scope of appellate review upon this issue is confined to determining whether the admission constituted abuse of judicial discretion in determining that a prima facie case had been made out."

We hold that the district judge did not abuse his discretion in admitting these phone calls in evidence.

■ The next contention is that the court failed to require the FBI Agent Palmros to produce notes of a statement of the defendant Rhodes. The witness first testified that he had made notes of the conversation with Rhodes but later, after examining his file and not being able to find the notes, stated that he did not recall exactly whether he ever made notes on the conversation but if he did make the notes they had been burned up. There was no positive showing that the notes had ever been in existence or were

---

1. The government was not attempting to prove the truth of the statements made in these conversations.

in existence at the time of the trial; nor does the record show that the request for these notes was made by counsel for appellants, but rather by counsel for the defendant Rhodes who was convicted but is not here an appellant. In any event, we see no error.

██ The appellants next complain that the court abused its discretion in allowing a witness to testify who had been present in court during the time that there had been in effect an order excluding witnesses. Appellant concedes that a witness is not disqualified as such merely because of a violation of such a rule, but that whether he shall be permitted to testify or not is a matter within the discretion of the court. Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); Coates v. United States, 59 F.2d 173 (9th Cir. 1932); United States v. Schaefer, 299 F.2d 625 (7th Cir.), cert. denied, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962). The witness testified to a brief telephone conversation that he had had with the appellant Richards which presumably occurred outside of the presence of any witnesses that had preceded him. We see no abuse of discretion in the court's action in permitting the witness to testify.

██ Appellants next complain that during the trial of the case on various occasions the district judge examined the witnesses, made comments to counsel for appellants, and generally conducted himself in a manner prejudicial to appellants' case. We have examined the record in this connection and also the comments made by the district judge during the instructions to the jury upon the various witnesses. We find nothing to criticize in the judge's conduct. A district judge has a right and indeed a duty to elicit facts from the witnesses in order to obtain a clear presentation of the issues. Dranow v. United States, 307 F.2d 545 (8th Cir. 1962). Such examination of the witnesses as was here made by the court was done in an entirely impartial manner and the comments of the district judge to counsel in the case, when taken in context, were in no way improper or prejudicial to either of the appellants.

██ Appellants also complain of the instructions to the jury given on the theory of aiding and abetting. No objection was made by counsel to the instructions on this subject as required by Rule 30, Federal Rule of Criminal Procedure and, as we see it, the giving of such instructions was neither plain nor any error.

██ Finally, appellants contend that "the verdict is contrary to the law and the evidence" and "there was no direct evidence connecting either of the appellants in any of the crimes and the circumstantial evidence was not credible." We have above referred in part to some of the evidence that was introduced. Much additional evidence was also presented. We are, of course, required to view the evidence in the light most favorable to the government and, viewed in that light, we hold that there was substantial evidence in the record to support the conviction of each of the appellants. Whaley v. United States, 324 F.2d 356, 358 (9th Cir. 1963), cert. denied, 376 U.S. 911, 84 S.Ct. 665, 11 L.Ed.2d 609 (1964).

Judgment affirmed.