**UNITED STATES of America,**
**Plaintiff,**

v.

**Bill HOLDER, Defendant.**

**Crim. No. 407.**

United States District Court
D. Montana,
Billings Division.

July 23, 1969.

Moody Brickett, U. S. Atty., Butte, Mont., and Clifford E. Schleusner, Asst. U. S. Atty., Billings, Mont., for plaintiff.

Samuel A. Anderson and Thomas J. Burns, Littleton, Colo., and Ernest F. Boschert, Billings, Mont., for defendant.

## ORDER AND OPINION

JAMESON, District Judge.

The defendant was convicted in a jury trial of transmitting "in interstate commerce from Billings, Montana, to the Federal Bureau of Investigation Headquarters in Washington, D. C., a telephonic communication containing a threat to injure the person of another, to-wit: a threat to cut off the head of Lawrence D. Talbot of Billings, Montana," in violation of 18 U.S.C. § 875.[1] He has moved for a judgment of acquittal notwithstanding the verdict,[2] or, in the alternative, for a new trial, contending that the Government (1) failed to

---

1. 18 U.S.C. § 875(c) provides:

    "Whoever transmits in interstate commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

2. A motion for acquittal was made at the close of the Government's case and again at the close of all the evidence, the court reserving a decision on this motion pursuant to Rule 29(b).

prove that the alleged offense was done in interstate commerce, and (2) failed to properly identify the defendant; and (3) that the court erred in its charge to the jury.

■ Defendant first argues that the alleged offense did not "constitute interstate commerce",[3] the conversation did not relate to "commerce" or "business", and it was not sufficient to show that the offense was committed by means of an instrumentality of interstate commerce.

It is not necessary that the telephone call "constitute" interstate commerce. The statute makes it an offense to "transmit" the communication "in" interstate commerce. It can not be questioned that the nation's vast network of telephone lines constitutes interstate commerce. It would be a strained construction indeed to hold that the "threat" must relate to "commerce" or "business".[4]

Analogous is the federal statute which makes it a crime to knowingly transport a stolen motor vehicle "in interstate or foreign commerce."[5] The "interstate commerce" requirement is satisfied by the mere fact that a motor vehicle is driven from one state to another, and there is no requirement that the transportation be for the purpose of engaging in an act of commerce. Hughes v. United States, 8 Cir. 1925, 4 F.2d 387, cert. denied 268 U.S. 692, 45 S.Ct. 511, 69 L.Ed. 1160;

Whitaker v. United States, 9 Cir. 1925, 5 F.2d 546, cert. denied 269 U.S. 569, 46 S.Ct. 25, 70 L.Ed. 416.

■■ A brief review of the evidence is necessary to a resolution of defendant's second contention that the Government failed to identify the defendant.

Mary Ann Horn, telephone operator, testified that at about 1:30 A.M. on January 9, 1968, she placed a call from Billings to Washington, D. C., for a person who identified himself as "Bill Holder of the Wyoming Coin Shop". She said that during the past six or seven years she had placed perhaps 200 calls for a man who identified himself in this exact manner, and that the voice on the January 9 call was the same as on the 200 previous occasions.

According to the "long distance toll ticket" Miss Horn prepared at the time of the call, the call originated from Billings telephone number 252–5507, and was made to Washington, D. C., telephone number 393–7100. The call was originally a "collect" call, but when the person answering in Washington refused to accept the charges, the caller agreed to assume the cost.

Also testifying for purposes of identification was Tim Shrine, a Unit Manager for Mountain States Telephone Company. Referring to the Billings telephone directory which would have been current in January, 1968, he read the following

3. "The term 'interstate commerce', as used in this title, includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territory, Possession, or the District of Columbia." 18 U.S.C. § 10.

4. For cases in which a telephoned threat has been found to be a violation of 18 U.S.C. § 875 ("Interstate Communications"), see Seeber v. United States, 9 Cir. 1964, 329 F.2d 572; Carbo v. United States, 9 Cir. 1963, 314 F.2d 718, cert. denied, Palmero v. United States, 377 U.S. 953, 84 S.Ct. 1625, 1626, 1627, 12 L.Ed.2d 498, reh. denied, 377 U.S. 1010, 84 S.Ct. 1902, 1903, 12 L.Ed.2d 1058; Rathbun v. United States, 10 Cir. 1956, 236 F.2d 514, aff'd, 355 U.S. 107, 78 S.Ct. 161,

2 L.Ed.2d 134, reh. denied 355 U.S. 925, 78 S.Ct. 363, 2 L.Ed.2d 355; United States v. Blount, 2 Cir. 1956, 229 F.2d 669. While the precise question raised by defendant was not considered, we find nothing in these cases to suggest that the threat itself must relate to "commerce" or "business". The threats considered clearly did not "constitute" commerce.

5. 18 U.S.C. § 2312. "Transportation of Stolen Vehicles,"
   "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

listing from the "yellow pages" classification "Coin Dealers, Supplies, Etc.":

"Billings Coin Shop
Branch of Wyoming Coin Co.
2719 1 Av N ....... 252–5507"

The listing in the "white pages" of the same telephone directory read: "Billings Coin Shop 2719 1 Av N ........ 252–5507".

According to the toll ticket, the telephone call was 15 minutes, 23½ seconds. The Billings Coin Shop, Box 103, Billings, Montana, accordingly was billed for sixteen minutes. No objection to the billing was recorded by the telephone company.

Arthur R. Ware of the F.B.I. Washington office testified that at approximately 3:30 A.M. E.S.T., January 9, 1968, he was called to the telephone at F.B.I. headquarters. The telephone number there was 202–393–7100. The caller identified himself as Bill Holder of Billings, Montana, and went on to make the alleged threat. According to Ware, he was on the phone for about ten or fifteen minutes. Ware could not identify the voice other than by the name given by the caller.

It is beyond dispute that identification of a telephone caller may be made by circumstantial evidence. See 1 Conrad, Modern Trial Evidence § 160 (1966 Supp.); 1 Jones on Evidence § 265 (5th ed. 1958); 7 Wigmore on Evidence § 2155 (3d ed. 1940). As the Ninth Circuit Court of Appeals stated in Carbo v. United States, 1963, 314 F.2d 718, 743:

"The issue for the trial judge in determining whether the required foundation for the introduction of the evidence has been established is whether the proof is such that the jury, acting as reasonable men, could find its authorship as claimed by the proponent."

It is my conclusion that, on the basis of all the supporting evidence presented by the United States, the jury, as reasonable men, *could* properly find that the defendant was the author of the January 9, 1968, telephone call. For factual situations supporting this conclusion, see Spindler v. United States, 9 Cir. 1964, 336 F.2d 678; Seeber v. United States, 9th Cir. 1964, 329 F.2d 572; Andrews v. United States, 10 Cir. 1935, 78 F.2d 274, 105 A.L.R. 322.

■ Defendant next complains that no government witness identified the defendant as the Bill Holder charged with the offense and that it is not possible from the record to tell whether the defendant was in the courtroom during the trial.[6] The court minutes disclose, however, that the defendant and his counsel were present at every stage of the proceedings from arraignment to the jury verdict. At the request of defendant's counsel, the name "Bill" was substituted for "William" in the indictment. At the outset of the trial, the defendant, through his counsel, advised the court that he was ready for trial. The fact that the Government did not produce a witness to "point out" the defendant was not prejudicial error under the circumstances of this case.

■ Finally defendant contends that the court erred in giving its instruction No. 15[7] and in failing to give defendant's offered instructions 1, 2, 3,

---

6. Rule 43, 18 U.S.C.A. provides:
"The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules * * *"

7. Instruction No. 15 reads:
"A threat is an avowed present determination or intent to injure presently or in the future. In order to constitute a threat a communication must be of such a nature as reasonably to have induced fear. The test of whether words or phrases are harmless or threatening is the context in which they are used, measured by the common experience of the society in which they are used. Under a statute such as I have just read to you, there is an offense when the language or expression used carries a reasonable common connotation of a threat to injure a person."

and 4.[8] With respect to the court's instruction No. 15 and defendant's offered instructions 1 and 2, in essence defendant argues that the Government was required to establish as essential elements of the offense (1) that the defendant intended to carry out the threat, (2) that he had a present or future ability to do so, and (3) that the threat must "have induced fear in the mind of the threatened person".

The jury was instructed that one of the essential elements of the offense was "that the communication of the threat was done knowingly and with the intent to communicate a threat to injure Lawrence D. Talbot." Instruction 15 defines a threat. It recognizes that the Government must prove an avowed "intent to injure presently or in the future", that it must be of "such a nature as reasonably to have induced fear", and that the test of whether the words used "are harmless or threatening is the context

in which they are used, measured by the common experience of the society in which they are used."

It is sufficient to establish a specific intent to communicate a threat to injure (as defined in instruction 15), i.e. the communication of the threat must be done "knowingly" and not "because of mistake or inadvertence or other innocent reason". Seeber v. United States, 9 Cir. 1964, 329 F.2d 572, 577. The threat must avow a threat to injure, but it is not necessary to prove the specific intent to injure[9] or the present ability to carry out the threat.

Somewhat analogous are cases construing 18 U.S.C. § 871(a) making it an offense to "knowingly and willfully" make a "threat" to take the life or inflict bodily injury upon the President of the United States. The recent case of Watts v. United States, 1968, 131 U.S.App.D.C. 125, 402 F.2d 676, 678, reviews these de-

---

8. The offered instructions read:

    1. If you find beyond a reasonable doubt that the alleged threats were made, that the defendant made the threats and that the defendant intended the threats, you must also find beyond a reasonable doubt that the threats were communicated to the alleged victim and you must also, in addition, find beyond a reasonable doubt that the threats were made in such a manner as reasonably to have induced fear in the mind of the threatened person.

    2. If you first find beyond a reasonable doubt that the alleged threats were made and that the Defendant made the threats, then you must also find beyond a reasonable doubt that the Defendant intended to carry out the threats in question.

    3. You are instructed that in order to find the Defendant guilty of the charge against him you must find beyond a reasonable doubt that the alleged threats were in fact made and that you must find beyond a reasonable doubt that the Defendant made the threats.

    4. You are instructed that in order to find the defendant guilty as charged. you must find beyond a reasonable doubt that the alleged phone call was made between one state and another state or the District of Columbia and that said phone call was made in fur-

therance of or substantially affecting commerce.

    Commerce is "business", within the definition of "business" as given in Webster's International Dictionary defining the word as "financial dealings, buying and selling; traffic in general, mercantile transactions." It is not a technical legal conception, but a practical one, drawn from the course of business. It also means trade in articles of property —correspondence, by telephone or otherwise between citizens of different states, though they may relate to commercial transactions are not commerce.

    Commerce means business intercourse especially the buying and selling of commodities on a large scale between different places; extended trade.

9. In Bass v. United States, 6 Cir. 1957, 239 F.2d 711, 716, involving the violation of 18 U.S.C. § 876 making it an offense to knowingly deposit in the mails a communication containing a threat to injure another person, the court said in part:

    "As to the claim that the government's proofs failed to show that the indictment letter did not disclose any intent on the part of the writer to injure the person named therein, such proof was unnecessary since proof of violation of the statute does not require evidence of intent to injure."

cisions. The majority opinion written by Judge Burger says in part:

"On its face, and under conventional standards of statutory construction, the statute prohibits the knowing and willful act of threatening the life of the President. The forbidden utterance is the criminal act; the adjective "willfully" precedes and modifies "threaten"; it has no relation whatever to the act of killing or injuring. The act of killing or assaulting is a separate crime. Therefore, the District Judge correctly instructed the jury: 'It is the making of the threat, not the intent to carry 'it out, that violates the law.'"

In a dissenting opinion Judge Wright stresses the use of the word "wilfully" and takes the position that to "wilfully threaten" meant "threaten with intent to execute".[10] The statute involved in this case makes it an offense to transmit a communication containing a threat, not to "willfully threaten." The language used in the majority opinion in Watts is even more persuasive in construing this statute.

 Defendant's offered instruction 1 is predicated upon his contention that the threat must reach the person threatened and be of such a nature as to have induced fear in the mind of that person. I do not so read the statute, which refers to "any threat to injure the person of another". As the court said in United States v. Feudale, D.Conn.1967, 271 F. Supp. 115:

"It is an essential element of the crime charged in this count [18 U.S.C. § 875 (c)] that there be a communication by defendant containing a threat to injure the person of another." (page 118) Seeber v. United States, supra, also upheld a conviction under 18 U.S.C. § 875(c) although the alleged threats made over the phone were delivered to persons other than the party the defendant intended to threaten.

 Nor is it necessary to show that the threat induced fear in the person threatened. It is sufficient to show that the threat was of such a nature as reasonably to have induced fear, even though the communication was not delivered to the person threatened. The test is whether the communication "in its context" would "have a reasonable tendency to create apprehension that its originator will act according to its tenor." Landry v. Daley, 280 F.Supp. 938, 962 (appeal dismissed Landry v. Boyle, 393 U.S. 220, 89 S.Ct. 455, 21 L. Ed.2d 392).

Defendant's offered instruction No. 3 was included in other instructions given by the court. His offered instruction No. 4 relates to the meaning of "interstate commerce". This was disposed of in the consideration of defendant's first contention.

Defendant's motion is denied.

---

10. The Supreme Court reversed Watts on the ground that the "political hyperbole indulged in" *did not constitute a threat.* The court called attention to Judge Shelley's dissent, but did not express any controlling opinion with respect to the majority construction of Section 871 (a). *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664.