**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**William George LeVISON, Defendant-Appellant.**

**No. 23974.**

United States Court of Appeals
Ninth Circuit.

Nov. 25, 26, 1969.

Johnston Jeffries (argued), Kenai, Alaska, for defendant-appellant.

Douglas Baily (argued), Asst. U. S. Atty., Marvin S. Frankel, U. S. Atty., Norman Sepenuk, Special Asst. U. S. Atty., Anchorage, Alaska, for plaintiff-appellee.

Before BARNES, ELY and HUF-STEDLER, Circuit Judges.

**BARNES, Circuit Judge:**

This is an appeal from a conviction by a jury on two counts of violation of 18 U.S.C. § 875(c) (the interstate communication by telephone of a threat to injure a person) and of 18 U.S.C. § 876 (the use of United States mail to deliver a threat to injure a person).

Appellant was sentenced to a three year concurrent sentence on each count, with each sentence suspended and probation granted.

The telephonic threat was made on September 26, 1967 in Los Angeles to appellant's former wife in Alaska, in which phone call appellant threatened to throw acid in the face of his former wife's mother, Mrs. June Pate, unless his daughter, Triston, wrote him. Thereafter, he called Mrs. Pate in Texas, advised her he had called his former wife (Mrs. Pate's daughter) and told her (his former wife) that if he did not hear from his daughter "that he would come down there and throw acid in your face. I will disfigure you so that even your friends won't know you. * * *"

The mailed threat was contained in a letter from appellant to his former wife, mailed in Los Angeles on October 6, 1967, addressed to his former wife, which stated, in part, as set forth in the margin.[1]

Two errors are alleged: *First*: that the court erred in admitting evidence of the appellant's telephone call to the mother, Mrs. Pate, because: "the two alleged crimes do not require specific intent and admission of such evidence was inflammatory, irrelevant, and prejudicial

1. "* * * I talked with your mother after I called you. She laughingly said she is not engaged which is of no importance to me—she is still your dear mama and I doubt if she is guarded day and night. Hate to play it this way as I respect June somewhat. But I find it necessary for the time being. I quite meant what I told you. I was on my way to the airport when I picked up your 'letter'—the ticket is still in my pocket. I suggest you put me in jail as you threatened—very soon or have Triston write me. Beginning now if she misses one week without an explanation from you I'm headed to Texas on the next convenient week-end. Of course you know I will know from her letter if you make them a 'directed assignment' so I suggest you face the fact that your ex-husband is a bastard and have Triston handle her own letters—otherwise they will mean nothing. "Don't worry about your mother I have already talked with her telling her exactly what I intend to do to her if it is necessary. I must say she took it lightly over the phone. Interesting. "Today is the 6th. Make good your threat about jail or have Triston write.

And if I receive a letter dictated by you to the effect that 'I'm fine and going to school and drinking my juice and happy' forget it—the only thing which would make me more angry is a duplicate of your last letter. "You have until the 15th, for me to receive a letter from Triston. That gives you nine days, but remember about the letter—it is to be from her if not you can kiss your dear mother's face goodby for whatever it is worth. I am quite sure a veil will cover it. "Next time you write have the dignity to sign it; from your letter Triston sounds like a small potential Tante which was to be expected. "Do you have now what you want out of life Diane? I have not yet but I intend to get it. You know if you leave Alaska your life expectancy is about zero after Bill's. How is the teaching—what grades? your painting? drawing? or is it chile cheeze (sic) surprize and a roast and trips to the supermarket? Believe me dear I reserve all my disgust and hate just for you—someday you are bound to get it.
                    Baron"
(Tr. 18–20.)

to appellant." *Second*: that misconduct of the jury required the trial judge to declare a mistrial.

We find no merit in either error urged.

As appellant recognizes in his brief, there exists little factual dispute—"the chief point in controversy \* \* \* was whether appellant actually made an oral threat to injure the complaining witness, or whether he simply made derogatory oral statements concerning his former wife and her mother."

■ Appellant urges that "intent" is no element of the offenses charged against him, citing United States v. Pennell, 144 F.Supp. 317 (N.D.Cal. 1956). Appellant misreads the holding of that case. It holds that under § 875(c) of Title 18, "Congress intended that the transmitting in interstate commerce of a communication threatening to injure the person of another should be, in and of itself, sufficient to constitute a violation under the Statute," *without being coupled with an intent to extort money or other things of value*, as the other subdivisions of § 875 require.

"If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent." Ellis v. United States, 206 U.S. 246, 257, 27 S.Ct. 600, 602, 51 L.Ed. 1047 (1906).

■ But proof of other criminal acts of an accused are admissible for several reasons other than to prove intent. As we so recently said in United States v. Jiminez-Robles, 415 F.2d 308, decided August 6, 1969:

"Granted, the *general* rule is, as appellant asserts, that evidence of prior criminal conduct is inadmissible. However, one well established exception to this rule is that such prior

criminal conduct can be introduced to show state of mind or intent, design, knowledge or lack of innocent purpose. Craft v. United States, 403 F.2d 360 (9 Cir. 1968); Metheany v. United States, 390 F.2d 559 (9 Cir. 1968); Asher v. United States, 394 F.2d 424 (9 Cir. 1968)."

In Seeber v. United States, 329 F.2d 572, 577 (1964), we characterized four instructions given (under the statute in effect prior to the time Congress made § 875(c) a separate crime) as not referring "to the vital issue of intent, and to that extent are incomplete." From this it can be inferred we considered a general intent to threaten is an essential element of the crime.

Relying on our *Seeber* case, the Fourth Circuit in United States v. Dutsch, 357 F.2d 331 (1966) at 333, has specifically held that a conviction under 18 U.S.C. § 875(c) "requires a showing that a threat was intended."

■ Thus, the trial court was amply justified in admitting into evidence proof of the appellant's subsequent threats to Mrs. Pate in the telephone call made to her *after* he had first called and threatened his former wife, to establish the appellant's intent at the time the threat was made to his onetime wife.

■ For still another reason we hold the admission of such testimony "of other threats" was not error. It was introduced into evidence on cross-examination of the complaining former wife by appellant's counsel (R.T. p. 28, l. 20). No motion to strike the witness' statement as nonresponsive (or on any other ground) was then made. On R.T. p. 30 appellant's counsel admitted he asked for hearsay testimony with respect to threats made by appellant to his former wife's mother, and specifically stated he had no objection to such testimony. Having thus created what is now asserted as error, appellant is in no position to complain.[2] Skiskowski v. United States,

---

2. The defense was, to say the least, inconsistent. The trial judge, previously to appellant's counsel having asked for the

testimony as to "other threats," had granted the appellant's motion to strike the complaining witness' conclusion that the

81 U.S.App.D.C. 274, 158 F.2d 177, 182 (1946); United States v. Bramson, 139 F.2d 598, 600 (2d Cir. 1943); Jarabo v. United States, 158 F.2d 509, 514 (1st Cir. 1946).

■ As to appellant's second alleged error, we quote with approval a portion of the appellee's brief on this subject:

"[T]hree jurors * * * had engaged in some brief speculation as to whether Appellant was under the influence of alcohol or drugs at the time he wrote the letter and/or made the phone calls (Tr. 148–165). Mrs. Wilson, the juror who instigated the conversation about the Appellant's possible use of alcohol or drugs, was excused by the Court and replaced by an alternate juror (Tr. 157). The other two lady jurors upon question by the Court, each stated that she could base her verdict solely on the evidence and testimony presented in the Courtroom (Tr. 160–163). After the alternate juror had been seated, the trial Court then asked whether there was any juror who could not base his decision solely upon the evidence presented in the Courtroom, to which no juror responded (Tr. 164). The Court thereupon reminded the jury of its sworn duty to base its verdict solely on the evidence in the case and that it would be a violation of such duty to base the verdict upon 'anything other than the testimony and evidence that you hear here in the Courtroom' (Tr. 164). Finally, in the instructions at the close of the case, the District Court again reminded the jury of its duty to consider only the evidence properly admitted in this case (Tr. 271).

"In view of the careful and repeated instructions of the trial Court in this regard we submit that no prejudice requiring reversal of the jury's deci-

sion can be shown in this case. Cavness v. United States, 187 F.2d 719, 723 (C.A. 9). This is especially true when it is considered that the nature of the speculation indulged in by the jurors was whether Appellant may have been under the influence of alcohol or drugs—factors which, if true, are ordinarily introduced by the *defense* in order to negative criminal intent. Indeed, it was the Appellant himself who later raised this issue when, in his closing argument to the jury, he denied that he was under the influence of alcohol or drugs but stated that, if such was the case, it would be a 'valid mitigating defense'." (Tr. 182–184; Appellee's Brief, pp. 9–10.)

We affirm the conviction on each count.

defendant "had threatened me before" (R.T. p. 9).

After seeking and placing the hearsay in the record, and stating he had no objection to it, counsel for defendant later changed his mind, asked that the hearsay be stricken, *and it was* (R.T. p. 31,

lines 5–9), and the jury admonished to disregard it.

Subsequently, counsel for appellant again on cross-examination asked the complaining former wife about "other threats" (R.T. 44).