**UNITED STATES of America**
**Plaintiff-Appellee,**

v.

**Robert William BOZEMAN,**
**Defendant-Appellant,**

**No. 74-1021**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 6, 1974.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Edward A. Dempsey, Jr., Jacksonville, Fla. (Court-appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Howard T. Snyder, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before GEWIN, GODBOLD and CLARK, Circuit Judges.

PER CURIAM:

Robert William Bozeman was tried and convicted on an information charging him with violating 18 U.S.C. § 875(c)[1] by making a telephonic threat on the life of one Lt. John William Acuff. On this appeal he argues that the evidence adduced at trial was insufficient to sustain his conviction. We affirm.

The factual background of this appeal is as follows. Bozeman, a merchant seaman whose documents had been revoked, filed an appeal for administrative clemency and for the return of his documents with the United States Coast Guard. During the pendency of this appeal, he on occasion discussed its progress with Lt. Acuff. On June 1, 1973 at approximately 11:30 A.M., Thomas Williams, a clerk-stenographer at the office of the Coast Guard commandant in Washington, D. C., received a phone call from a caller identifying himself as Robert William Bozeman. During the course of a fifteen minute conversation, the caller twice threatened to kill Lt. Acuff. That same afternoon, after Williams had informed his superiors of the call, the Washington Coast Guard office briefed the Jacksonville office on the threat. When Lt. Midgett of the latter office called Bozeman's mother's house in Clermont, Fla., someone identifying himself as Bozeman answered, and, after being asked about the Washington phone call, his response was, "[i]f that is the only way I can get my documents back . . . to kill him, I guess I will have to do it." Subsequently, Bozeman visited Lt. Acuff's Jacksonville office. Two customs agents were present at the time[2] and one, Ledford, testified that he heard Bozeman say, "Acuff was a sorry excuse for a human being or a man and that he didn't deserve to live." Another agent, Dukes, testified that Bozeman said, "Acuff was a sorry excuse for a human being and he should be dead."

■ Bozeman argues that the trial judge erred in not granting his motion for an acquittal because the government's proof failed to show (1) he actually made the alleged threatening call of June 1; (2) that a threat was actually made; and (3) that the threat was made knowingly and intentionally. As to (2), Bozeman relies on Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22

---

1. 18 U.S.C. § 875(c) provides:
"Whoever transmits in interstate commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

2. When Bozeman came to the Jacksonville office, Acuff had asked the customs officers to be present since he was afraid of Bozeman.

L.Ed.2d 664 (1969); in which the defendant, alluding to the possibility of being drafted, stated to a discussion group at a political gathering, "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." The Court held that "[t]aken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners [laughter]," this was not the sort of statement prescribed by 18 U.S.C. § 871(a).[3] While it is true that the statements made to Lt. Midgett and in the hearing of the customs officers were phrased in conditional terms, the testimony of Williams makes it clear beyond cavil that the June 1 threat, the subject of this information, was express and unequivocal, to wit, "I will kill him." Considering this testimony in the light most favorable to the government, *see* Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1944), this statement meets the test of what amounts to a threat under 18 U.S.C. § 875(c), *i. e.*, "[this] communication 'in its context' would 'have a reasonable tendency to create apprehension that its originator will act according to its tenor'," United States v. Holder, 302 F. Supp. 296, 301 (D.Montana 1969) aff'd 427 F.2d 715 (9th Cir. 1970), citing Landry v. Daley, 280 F.Supp. 938, 962 (D.C.Ill.1968).

■ As to (1), relying on United States v. Smith, 5 Cir., 433 F.2d 1266, cert. denied 401 U.S. 977, 91 S.Ct. 1206, 28 L.Ed.2d 328 (1970), Bozeman argues that since there was no proof either Williams or Midgett recognized his voice or that he was physically present in Clermont, Florida at the time of the June 1 call, the government failed to create a jury issue as to his identity as the call-

er. This issue is one often contested in 875(c) cases and "[i]t is [clear] beyond dispute that identification of a telephone caller may be [established] by circumstantial evidence." United States v. Holder, *supra*; Spindler v. United States, 336 F.2d 678 (9th Cir. 1964); Seeber v. United States, 329 F.2d 572 (9th Cir. 1964). In *Smith* a voice identification and proof of Smith's physical presence near the phone booth to which the call was traced at about the time of the call were elements considered by the court as bearing on identity. However, our reading of *Smith* is that these are relevant considerations, not essential ones. In the instant case, Williams' testimony that the caller claimed to be Bozeman, telephone company records of a call from Bozeman's mother's house to a Washington Coast Guard number on the same date and at the same times as Williams testified the call was made; Midgett's testimony indicating an admission by someone identifying himself as Bozeman that he made the threatening call; and the customs agents' testimony as to subsequent statements by Bozeman taken together were a sufficient basis for a jury to conclude that Bozeman was the caller.

■ Finally, as to his point 3, Bozeman argues that Williams' description of the caller as being irrational makes it clear that the government failed to prove that the alleged threat was wilfully and intentionally made. He is correct in asserting that a conviction under 18 U.S.C. 875(c) requires proof that the threat was made knowingly and intentionally. *See, e. g.*, United States v. LeVison, 418 F.2d 624 (9th Cir. 1969); United States v. Dutsch, 357 F. 2d 331 (4th Cir. 1966); and Seeber v.

---

3. 18 U.S.C. § 871(a) provides:

"Whoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of or to inflict bodily harm upon the President of the United States, the President-elect, the Vice President or other officer next in the order of succession to the office of President of the United States, or the Vice President-elect, or knowingly and willfully otherwise makes any such threat against the President, President-elect, Vice President or other officer next in the order of succession to the office of President, or Vice President-elect, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

United States, *supra.* However, the evidence, viewed in the light most favorable to the government, *see* Glasser v. United States, *supra,* and United States v. Squella-Avendano, 478 F.2d 433 (5th Cir. 1973); was sufficient to support the conviction. On cross-examination, Williams did once use the adjective "irrational" in describing his evaluation of Bozeman's telephone threat. However, in light of the remainder of Williams' testimony, as well as the testimony of Lt. Midgett and the two customs officers concerning subsequent statements made by Bozeman relevant to the issue of intent, Dutsch, *supra,* and LeVison, *supra,* ample proof was provided of this element of the crime. In these circumstances the jury, which was properly instructed,[4] could have found that this threat was made knowingly and intentionally.

Affirmed.

---

4. The court instructed the jury that "the threat must have been made by the Defendant knowingly and intentionally." It further instructed the jury that "when the word used because of mistake, inadvertence or other innocent reason convey an apparent intention to injure the person of another, such words are not a threat within the meaning of the statute."