**UNITED STATES of America, Plaintiff,**

v.

**Matthew Joseph KAMMERSELL, Defendant.**

**No. 2:97–CR–84C.**

United States District Court, D. Utah, Central Division.

June 3, 1998.

the transmission of a threat from one Utah resident to another by means of email does not create federal jurisdiction over interstate crimes, even if, as here, the transmission was actually routed from Utah to Virginia and then back again. United States Magistrate Judge Ronald Boyce issued a Report and Recommendation in which he concluded that the defendant's motion should be denied. The defendant has objected to the Report and Recommendation.

Defendant's argument is a matter of first impression in this circuit and the court acknowledges that similar arguments have created a split of authority in other jurisdictions. *Compare United States v. Paredes*, 950 F.Supp. 584, 590 (S.D.N.Y.1996) (defendant's use of his paging system, which transmitted signals to a tower across state lines, did not satisfy interstate nexus requirement because the sender and the recipient were both located in the same state) *with United States v. Stevens*, 842 F.Supp. 96, 97 (S.D.N.Y.1994) (use of paging system which transmits interstate signals satisfies interstate nexus for federal jurisdiction, even though paged party was ultimately reached in the same state as the paging party). Nevertheless, after reviewing the Report, the case file, and the applicable law, the court believes that Judge Boyce's conclusion is entirely correct. Accordingly, the Report and Recommendation is adopted as the order of this court.

SO ORDERED.

### REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

The defendant Matthew Joseph Kammersell was indicted on one count of making a threatening communication in violation of 18 U.S.C. § 875(c). The indictment charges that on January 16, 1997, Kammersell did "knowingly transmit in interstate commerce to America Online, Ogden, Utah, a communication to injure the person of another by means of a bomb ...." (File Entry # 11).

Thereafter, the defendant made a motion to dismiss the indictment contending the United States "does not have jurisdiction to prosecute the matter". (File Entry # 28). The defendant contends the offense was not

Richard N. Lambert, Salt Lake City, Utah, for plaintiff.

Deirdre A. Gorman, Ogden, Utah, for defendant.

### ORDER

CAMPBELL, District Judge.

This matter is before the court on the defendant's motion to dismiss the indictment. The basis for the defendant's motion is that

committed by way of interstate or foreign commerce but was committed in the State of Utah. (File Entry # 28). The defendant submitted a memorandum in support of the motion to dismiss. (File Entry # 29). In the motion, the defendant put forth some facts which are not disputed.

The defendant asserts the government's position is that defendant transmitted the message to America on Line. The claim is that the communication was electronically transmitted from Riverdale, Utah, to Ogden, Utah, but that the message was routed outside the State of Utah before the recipient of the threat received it in Ogden, Utah. It is the defendant's position that the interstate jurisdiction is not established even if the message traveled from Riverdale, Utah, outside of Utah and then back to Ogden, Utah. (File Entry # 29, p. 2).

The United States filed a response to the motion to dismiss (File Entry # 33) contending that the transmissions from defendant's computer through Virginia and then back to recipient's computer in Utah was a transmission in interstate commerce under 18 U.S.C. § 857(c).

The defendant has also suggested *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), is a limitation on the application this court can give to the term "interstate commerce" under 18 U.S.C. § 857(c). (File Entry # 29). The defendant suggests the application of federal interstate commerce jurisdiction to the facts of this case would violate the *Lopez* standards. (Tr. p. 8).

### Discussion

The grand jury's indictment in this case established probable cause for the conclusion that the defendant's transmission of the threat to the victim passed in interstate commerce. The United States conceded at hearing on the motion to dismiss that its evidence on this issue is that the defendant logged on to the Internet through America Online in Utah and sent an electronic message from Utah by the server (American Online), through the server's facility in Virginia and back to Ogden, Utah, where it was received by the victim. (Tr. pp. 6–7). The message was a threat. It was also conceded a different server may have a different transmission

system not involving interstate transmission. (Tr. p. 7). Every message from America Online in Utah goes through Virginia to the recipient. (Tr. p. 7). The defendant, for the purposes of this motion, conceded the facts that the transmission by defendant placed through America Online in Utah went to Virginia and was routed back to Utah to the victim. (Tr. pp. 7–8). The transmission was an "insta-message" and the recipient had to have access to the same server as the sender. (Tr. pp. 11–12).

The defendant contends, and it appears undisputed, that no one saw the message in Virginia, although there is no requirement under 18 U.S.C. § 875(c) that the threat actually be received or seen by someone. The threat was seen, in this case, at the victim's computer. The message was sent to the recipient a distance of thousands of miles but it was about four miles from the initial transmission to the recipient if measured by a straight line.

### 18 U.S.C. § 875(c)

The statute at issue in this case is 18 U.S.C. § 875(c). It provides:

"Whoever *transmits in interstate* or foreign *commerce any communication* containing any demand or request for a ransom or reward for the release of any kidnaped person, shall be fined under this title or imprisoned not more than twenty years, or both." (Emphasis added).

The *actus reus* of the offense is the transmission of the threat in interstate commerce. The threat need not be received by the intended recipient. The crime is complete upon the transmission in interstate commerce with the requisite general intent to transmit the threat. No *mens rea* is specifically mentioned in the statute. In *United States v. Bozeman*, 495 F.2d 508 (5th Cir.1974), the court said the *mens rea* was a knowing and intentional state of mind. See *United States v. Myers*, 104 F.3d 76 (5th Cir.1997) (The court said the offense was a general intent crime). The Ninth Circuit has referred to a general intent, *United States v. Levison*, 418 F.2d 624 (9th Cir.1969), but thereafter a specific intent standard was adopted in *United States v. Twine*, 853 F.2d

676 (9th Cir.1988). It is sufficient to establish the knowing transmission and it is not necessary to prove a specific intent to injure or present ability to carry out the threat. *United States v. Holder,* 302 F.Supp. 296 (D.Mont.1969) aff'd. 427 F.2d 715 (9th Cir.).

The Eleventh Circuit has stated the threat to kidnap or injure requires only that defendant acted willfully and knowingly. *United States v. Himelwright,* 42 F.3d 777 (3rd Cir. 1994). It is not necessary to show that defendant knew his transmission crossed a state line. *United States v. Darby,* 37 F.3d 1059 (4th Cir.1994) (Court acknowledged split in the circuits. *Id.* p. 1063). See also *United States v. DeAndino,* 958 F.2d 146 (6th Cir.1992) (Only a general intent rather than a specific intent is required);[1] *United States v. Whiffen,* 121 F.3d 18 (1st Cir.1997) (Only a general intent is required); *United States v. Alkhabaz,* 104 F.3d 1492, 1494 (6th Cir.1997).

The *mens rea* for the offense is not disputed for the purposes of this motion, only whether the *actus reus* element of interstate commerce is satisfied. The conflict in the circuits on *mens rea* need not be resolved in this case.

The statute was enacted May 18, 1934, (Ch. 300, 48 Stat. 781), 18 U.S.C. § 408(w). *United States v. Heller,* 579 F.2d 990 (6th Cir.1978) (Full discussion of legislative history). The provisions of 18 U.S.C. § 875(c), non extortionate threats was added on 1939, 53 Stat. 743 (then 18 U.S.C. § 408(a)). Transmission in interstate commerce is required. *United States v. Oxendine,* 531 F.2d 957 (9th Cir.1976). It is apparent that when the statute was enacted, Congress intended to encompass "any" threat to injure that is transmitted in interstate commerce regardless of the method used. *Heller,* infra.[2] The statute is broad and from the language used by Congress the purpose was to make a federal crime of the transmission or a threat in interstate commerce without limitation as to the means employed.

*Statutory Construction*

■ Criminal statutes should be construed to effect the intent of Congress. *Negonsott v. Samuels,* 507 U.S. 99, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993) ("Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive"). *Id.* p. 104, 113 S.Ct. 1119. (Construing jurisdiction to prosecute offenses on a Kansas Indian reservation). In *Norfolk Western v. Am. Train Dispatchers,* 499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991), the court said, "As always, we begin with the language of the statute and ask whether Congress has spoken... If the intent of Congress is clear, that is the end of the matter; for the court must give effect to the unambiguously expressed intent of Congress." *Id.* p. 128, 111 S.Ct. 1156.

■ The plain meaning of the language of the statute should be conclusive of its construction except in rare instances. In *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the court said, quoting from *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982), "The plain meaning of legislation should be conclusive, except in rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters." The court also stated, "Rather as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *Id.* pp. 240–41, 102 S.Ct. 3245.

■ "Transmits ... in interstate commerce" is not ambiguous. *Telephone News System, Inc. v. Illinois Bell Tel. Co.,* 220 F.Supp. 621, 638 (N.D.Ill.1963) (Transmission is sending); *United States v. Reeder,* 614 F.2d 1179, 1184 (8th Cir.1980); see also *Pic–A–State Pa., Inc. v. Reno,* 76 F.3d 1294 (3rd Cir.1996) (Upholding 18 U.S.C. § 1301 which prohibits transmitting in interstate com-

---

1. 18 U.S.C. § 875(b) is different. It requires an intent to extort. *United States v. Heller,* 579 F.2d 990 (6th Cir.1978), but see *United States v. Twine, supra* (Specific intent required for a § 875(c) offense).

2. The statute refers to "any communication".

merce of lottery ticket information cover). Its plain meaning encompasses the conduct in this case. The defendant has not claimed ambiguity but essentially argues that the statute should be given a narrower construction than the charge in the indictment. Without providing significant support, the defendant assumes that either Congress did not intend the result in this case or that *Lopez, supra,* requires a narrowed construction. The argument essentially admits the interstate connection but contends in this case it is insufficient to violate the statute.

### The Lopez Argument

■ In *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court further defined the power of Congress to establish federal crimes in the exercise of its constitutional power under the Commerce Clause. The court on *Lopez* struck down congressional legislation enacting a "Gun Free School Zone Act." In the decision, the court noted three categories of criminal laws that may be based on the Commerce Clause. First, is when there is the use of channels of interstate commerce. See, for example, *Brooks v. United States,* 267 U.S. 432, 436–37, 45 S.Ct. 345, 69 L.Ed. 699 (1925) upholding the prohibition of interstate transportation of stolen vehicles, 18 U.S.C. § 2312 (Dyer Act); *Hoke v. United States,* 227 U.S. 308, 320–21, 33 S.Ct. 281, 57 L.Ed. 523 (1913) interstate transportation of women for prostitution, 18 U.S.C. 2421 (Mann Act). Second, Congress may impose criminal sanctions in protection of the instrumentalities of interstate commerce. *Champion v. Ames,* 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492 (1903) (Prohibiting mailing of lottery tickets); wire and mail fraud, *Durland v. United States,* 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896). 18 U.S.C. § 1341 and 1343; (railroads); 18 U.S.C. § 1992; (wrecking trains); aircraft (49 U.S.C. § 465). The third category is where there is an activity affecting interstate commerce. The last category requires a showing of a substantial affect on interstate commerce. *Id.* 514 U.S. at 558–59, 115 S.Ct. 1624. It is this latter category to which the *Lopez* case was addressed.

In this case, the court is not concerned with the "affect" on interstate commerce standard. Rather, the first two categories are applicable. First, Congress, by requiring a transmission in interstate commerce, was focusing on channels of interstate commerce. Second, the use of an Internet server by defendant for the transmission involved in this case was the use of an instrumentality of interstate commerce.[3] The *Lopez* decision is not directly involved with the commerce power exercised in this case and therefore not a restriction of the application of 18 U.S.C § 375(c) under the facts of this case.

At the same time that Congress enacted the predecessor to 18 U.S.C. § 875(c), it took action in several other areas of federal criminal law where federal intervention had been shown to be necessary. In 1932, the Lindbergh Act prohibiting transportation of a kidnaping victim across state lines was adopted, Ch. 271, 47 Stat. 326 (1932) amended in 1934, now 18 U.S.C. § 1201. In that circumstance, a presumption of transportation allows federal involvement. 18 U.S.C. § 1201(b). The Fugitive Felon Act, interstate flight to avoid prosecution for enumerated felonies, Ch. 302, 48 Stat. 782 (1934), now 18 U.S.C. § 1073 was adopted in 1934. The National Firearms Act regulating the sale of guns was adopted by the Act of June 26, 1934, Ch. 757, 48 Stat. 1236. The National Stolen Property Act, prohibiting the transportation of stolen property in interstate commerce was enacted in 1934, Ch. 333, 48 Stat., now 18 U .S.C. § 2314. Robbery of national banks, Ch. 304, 48 Stat. 783, now 18 U.S.C. § 2113, was adopted in 1934 as was 18 U.S.C. § 875 which covered extortion by telephone, telegraph and radio. The statute 18 U.S.C. § 875, was then amended to the form it is currently in to eliminate a reference to a requirement of a particular kind of device. "Any communication" became the standard. Other legislation also was enacted which Congress believed necessary in the national interest. Lawrence M. Friedman, *Crime and Punishment in American History,* p. 267 (1994). These enactments were to protect the channels and instrumentalities of

---

**3.** At oral argument counsel for defendant seemed to concede the congressional power to regulate the Internet. (Tr. p. 16).

commerce and demonstrate the fact that the statute involved in this case is not one that was a part of the later expansion of federal jurisdiction under the third criteria "substantial affect on interstate commerce." See also *Andrew St. Laurent, Reconstituting United States v. Lopez: Another Look at Federal Criminal Law, 31 Columbia Jnl. of Law and Social Problems,* 61, 71–74 (1997); Nancy E. Marion, *A History of Federal Crime Control Initiatives,* 1960–1993, pp. 144–213 (1994).

Since the decision in *Lopez,* its range has been narrowly interpreted by the Tenth Circuit Court of Appeals. In *United States v. Carolina,* 61 F.3d 917, 1995 WL 422862 (10th Cir.1995), the court held the federal carjacking statute had a sufficient "affect" on commerce. The same conclusion was reached as to a Hobbs Act racketeering challenge in *United States v. Bruce,* 78 F.3d 1506 (10th Cir.1996). The constitutionality of the Child Support Recovery Act of 1992 was upheld in *United States v. Hampshire,* 95 F.3d 999 (10th Cir.1996). A similar conclusion was reached, *United States v. Meacham,* 115 F.3d 1488 (10th Cir.1997), as to the Mann Act and the court stated it was not necessary to show a substantial affect on commerce in that instance. The same conclusion was reached as to the circumstance of a felon in possession of a firearm in *United States v. Farnsworth,* 92 F.3d 1001, 1006 (10th Cir. 1996). In *United States v. Wacker,* 72 F.3d 1453 (10th Cir.1995), the court found no basis under *Lopez* for a challenge to congressional power to enact the Comprehensive Drug Abuse Prevention and Control Act of 1970, as amended. See also *United States v. Kunzman,* 125 F.3d 1363, 1365 (10th Cir.1997); *United States v. Lampley,* 127 F.3d 1231, 1238 (10th Cir.1997). These cases which involve channels of interstate commerce and circumstances where interstate commerce is substantially affected do not support any basis for attacking federal jurisdiction in this case, nor any reason not to construe 18 U.S.C. § 875(c) as the prosecution contends for its application in the indictment.

*Judicial Construction*

The remaining issue is whether federal judicial construction given to 18 U.S.C.

§ 875(c) is inconsistent with the exercise of federal jurisdiction in this case.

In *United States v. Oxendine, supra,* the court noted that in the absence of a transmission in interstate commerce there can be no violation under § 875(c). However, it is not disputed for this motion that there was a transmission in interstate commerce. The threatening communication need not itself constitute interstate commerce. No business of commercial end need be involved. *United States v. Holder,* 302 F.Supp. 296 (D.Mont. 1969) aff'd. 427 F.2d 715 (9th Cir.).

In *United States v. Whiffen,* supra, the defendant made a phone call in New Hampshire to an insurance company office in New Hampshire. The call was automatically transferred to an office in Florida. A threat was made in the conversation with the transferee. The court held the evidence sufficient for conviction. It is not clear if the defendant knew he was talking to a person in Florida.[4] In *United States v. Alkhabaz,* 104 F.3d 1492 (6th Cir.1997), the defendant transmitted materials to another on the Internet. The court said it could not "be seriously challenged" that the Internet transmission was a transmission in interstate commerce. *Id.* p. 1494. Internet private E-mail messages were accepted as interstate commerce but no true threat was involved in *United States v. Baker,* 890 F.Supp. 1375 (E.D.Mich.1995).

In *United States v. Korab,* 893 F.2d 212 (9th Cir.1989), the court found the evidence insufficient to show the interstate communication was in fact a threat at the time it was made. Mere use of an interstate communication to solicit and plan an extortion was ruled insufficient. However, the case has no application here since the "threat" in this case was transmitted in interstate commerce in one communication.

Supporting the government's position in this case is *United States v. Kelner,* 534 F.2d 1020 (2d Cir.1976). The defendant made a threat on a television broadcast to assassinate a foreign official who was in the same city. However, the broadcast went in inter-

4. No specific challenge was made to the interstate commerce transmission. The transmission was obviously in interstate commerce, as it is in this case.

state commerce within the range of the television transmission. However, the threat to the victim was direct within the state. The court held the circumstance violated § 875(c). An interstate facility was used and the transmission itself traveled interstate. The case supports jurisdiction in this case.

From the authorities that have addressed somewhat similar circumstances to those in this case, it must be concluded that no accepted judicial construction requires the dismissal of the indictment, but other court decisions support the exercise of jurisdiction by their court.

In this case, there was an interstate transmission of a true threat. The fact that the recipient of the threat was located in the same state is of no consequence. *Kelner, supra.* Congress obviously intended to use the federal commerce power to protect against misuse of the channels and instrumentalities of interstate commerce. In many instances state resources could not easily or expeditiously treat the problem of an interstate threat. The fact in this one instance the circumstance may exist might be that a state could conveniently pursue the matter does preclude federal jurisdiction or require a special application or construction of the statute. If the general object is within the constitutional authority of Congress the federal authority is served. Ronald D. Rotunda and John E. Nowak, *Treatise on Constitutional Law,* 2 Ed. § 23.14, referring to *Cooley v. Board of Wardens,* 53 U.S. 299, 319–20, 12 How. 299, 13 L.Ed. 996(1851). Therefore, jurisdiction exists in this case.

### Conclusion

The defendant's motion to dismiss should be denied. The congressional intent and plain meaning of statute support jurisdiction in this case. Nothing under the commerce authority of Congress requires a limitation in this instance, and the exercise of jurisdiction is not inconsistent with a proper judicial construction of 18 U.S.C. § 875(c).

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.