[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 20, 2003
THOMAS K. KAHN
CLERK

No. 02-12980

_____

D. C. Docket No. 01-06304-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN MUSHIN ALABOUD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 20, 2003)**

Before WILSON and COX, Circuit Judges, and GEORGE[*], District Judge.

WILSON, Circuit Judge:

Kevin Mushin Alaboud appeals his conviction on three counts of

transmitting in interstate commerce a communication containing a threat to injure

_____

[*] Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

the person of another, in violation of 18 U.S.C. § 875(c). Alaboud contends that the government failed to adduce sufficient evidence at trial to convict him of § 875(c). In addition, Alaboud argues that the district court committed reversible error by permitting the victim, Marlowe Blake, to testify as to his belief that Alaboud's statements were threats.[1]

We find that the evidence presented at trial sufficiently established that Alaboud violated § 875(c) and that the district court committed no reversible error regarding its evidentiary ruling.

## BACKGROUND

Alaboud is a naturalized U.S. citizen, having immigrated to this country from his native Iraq in the early 1980's. He was educated as an engineer but was terminated from a series of jobs which he believed to be due to anti-Iraq sentiments engendered by the Gulf War. In 1994, he went to medical school in Montserrat, but he claims that he was unjustifiably denied his certification.

Seeking compensation for his allegedly unwarranted dismissal from medical school, he commenced legal proceedings against the institution in the Florida

---

[1] Alaboud also challenges the constitutionality of § 875(c), claiming that it violates the First Amendment. Alaboud did not raise this issue before the district court. Thus, we have discretion whether to consider this issue on appeal, and will do so only if we determine it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993). This claim is not such an instance, so we exercise our discretion not to consider this issue.

courts. In November 1998, Alaboud hired Marlowe Blake, a lawyer, for services in connection with his dismissal from medical school. He paid Blake a retainer fee before Blake began work on Alaboud's case. At one point when Blake was meeting Alaboud, Blake noted his Jewish ancestry. After working about 73 hours on the case, Alaboud refused to pay Blake the remainder of the fee he owed him. With Alaboud's written permission, Blake moved to withdraw from Alaboud's case.

Approximately two years later, in June 2001, Alaboud began to flood Blake's office with telephone calls which Blake and his receptionist thought were threatening. In all, Alaboud called Blake's office 89 times, including 29 calls in a single day. His telephone communications generally promised retribution upon Blake, his law firm, the population of Florida and the Jewish people if Alaboud was not refunded his retainer.

Five of the offending calls were selected to be charged in the indictment. One call was received on Blake's voicemail, wherein Alaboud stated that "one day soon one will come and liberate America and this planet from the grip of Jews, like yourself, Marlowe . . . but the rest should be heads put in a vice and . . . these should be knocked out with a sledge hammer." Shortly thereafter, Blake received a call from Alaboud where Blake was warned to "[l]ook at Montserrat, take an

aerial photograph of Montserrat and you will then be looking at your company . . . in the next few . . . weeks" (the Island of Montserrat was largely destroyed by a volcanic eruption). In another call, Alaboud told Blake, "If justice is not given to me the population of the area from Key West to Tallahassee will be driven from their homes, what happened to Montserrat will happen to them, they will lose their homes." In another instance, Alaboud told Blake's receptionist that "you and all the Jewish women and children would be burned." A few months later, he told the firm's answering service that "Ax and sledgehammers would be utilized to make justice."

Blake understood the calls to constitute a physical threat. Blake was concerned by the wording, frequency and tone of the calls. He also was apprehensive because he had not heard from Alaboud for two years. Thus, Blake contacted the Federal Bureau of Investigation (FBI), installed a system of security cameras at his law firm, instituted an electronic entry system and barricaded the windows. Blake also renewed his permit to carry a concealed weapon, took target practice and began to carry a firearm at all times.

In November 2001, Alaboud was arrested. After being advised of his Miranda rights, he confessed to making the 89 phone calls to Blake's office. He told the arresting officer, "I only gave him a warning that he would lose his home

4

and job if he did not give me my money back. I warned him because I wanted a trial of my case."

In May 2002, Alaboud was tried for violating § 875(c). During the trial, over defense's objection, Blake was allowed to testify as to his perception that the telephone calls made by Alaboud were threats. Additionally, at the close of the defense's case, counsel made a motion pursuant to Fed. R. Crim. P. 29, seeking a judgment of acquittal as to all counts. The district court denied the motion, instructed the jury, and the jury convicted Alaboud on three of the five counts. Alaboud appeals the denial of the Rule 29 motion and the court's decision to allow Blake to testify as to his perception of Alaboud's statements.

## I.

The first issue is whether there was sufficient evidence for the district court to deny Alaboud's Rule 29 motion. Whether there was sufficient evidence to support a conviction is a question of law subject to *de novo* review. *United States v. Delgado*, 56 F.3d 1357, 1363 (11th Cir. 1995). In assessing the sufficiency of the evidence, this Court views the evidence in the light most favorable to the government with all reasonable inferences and credibility choices made in the prosecution's favor. *United States v. Lopez-Ramirez*, 68 F.3d 438, 440 (11th Cir. 1995). A jury's verdict must be sustained against such a challenge if "any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Alaboud was convicted of violating 18 U.S.C. § 875(c), which provides in relevant part:

> Whoever transmits in interstate or foreign commerce any communication containing . . . any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

A conviction under § 875(c) requires proof that the threat was made "knowingly and intentionally." *United States v. Bozeman*, 495 F.2d 508, 510 (5th Cir. 1974).[2] A communication is a threat when "in its context [it] would 'have a reasonable tendency to create apprehension that its originator will act according to its tenor.'" *Id.* (quoting *United States v. Holder*, 302 F.Supp. 296, 301 (D. Mont. 1969), *aff'd*, 427 F.2d 715 (9th Cir. 1970)). In other words, the inquiry is whether there was "sufficient evidence to prove beyond a reasonable doubt that the defendant intentionally made the statement under such circumstances that a reasonable person would construe them as a serious expression of an intention to inflict bodily harm . . . ." *United States v. Callahan*, 702 F.2d 964, 965 (11th Cir. 1983)

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

(construing 18 U.S.C. § 871).  Thus, the offending remarks must be measured by an objective standard.[3]

Alaboud argues that his statements, while offensive, were not "threats" within the meaning of § 875(c).  He never specifically asserted that he would personally carry out the promised vengeance.  Rather, Alaboud argues that his statements are more akin to the fire and brimstone prophecies of some television evangelists, and no reasonable person could have interpreted them otherwise.  Specifically, he argues that *Callahan* requires that one explicitly specify a date, time, and place, or at least explicitly manifest a willingness to undertake the deeds himself in order for a communication to be deemed a threat.

---

[3] While neither the government or Alaboud contest that we use an objective standard in determining whether a communication is a threat, the government in its brief makes an issue of the distinction between "listener-based" and "speaker-based" tests.  A "speaker-based" test is whether the person *uttering* the statements should be held to reasonably foresee their effect on the recipient. *See, e.g.*, *United States v. Fulmer*, 108 F.3d 1486, 1491-92 (1st Cir. 1997).  On the other hand, a "listener-based" test is whether a person *hearing* the remarks would reasonably interpret them as an expression of an intent to harm. *See, e.g.*, *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994).

This Court has not specified if we use a "listener-based" or "speaker-based" test because there is no need to make this determination.  Both tests are basically a "listener-based" test.  If we were to employ the "speaker-based" test, the jury would have to decide how a reasonable listener would understand the communication in order to determine how a reasonable speaker would foresee the effect of his or her communication. *See* Jennifer Rothman, *Freedom of Speech and True Threats*, 25 Harv. J.L. & Pub. Pol'y 283, 303 (Fall 2001).  That is why, in *Callahan*, we never specified if we have a "listener-based" or "speaker-based" test, but rather simply asked how a "reasonable *person* would construe" the communication. *Callahan*, 702 F.2d at 965 (emphasis added).

While one of Alaboud's statements, taken in isolation, may not rise to the level of a threat within the meaning of § 875(c), that was not the case here. The fact-finder must look at the context in which the communication was made to determine if the communication would cause a reasonable person to construe it as a serious intention to inflict bodily harm. *See Callahan*, 702 F.2d at 965; *Bozeman*, 495 F.2d at 510. In this instance, it was reasonable for Blake to construe Alaboud's statements as a threat to inflict harm upon him and his law firm. The offending messages entailed graphic promises of violence that would fall upon Blake and his law firm if Blake did not return the retainer fee. The threatening nature of the challenged remarks are evident in Alaboud's tone, too, which was a calm voice that had a chilling effect given the violent message he was conveying. Also, the number of calls made to Blake and his firm, 89 in all, would give a reasonable person apprehension that Alaboud may have a serious intention to inflict physical harm upon him.

Additionally, the context in which these messages were made gave Blake reason to believe Alaboud was serious. Alaboud blamed Blake for his failure to receive judgment against the medical school he attended. Alaboud's anger apparently erupted two years after their relationship ended making it reasonable for Blake to believe it signified a deep, irrational resentment that would manifest

8

itself in an act of physical violence. Blake responded by taking significant steps to protect himself from what he reasonably believed to be a potential imminent attack by installing a security system, barricading his firm's windows, and carrying a concealed weapon. Thus, looking at the context in which Alaboud's statements were made, we conclude that a jury could reasonably determine that Alaboud communicated threats to Blake violating § 875(c).

## II.

Alaboud also contends that the district court erred in allowing Blake to testify as to his perception of the messages he received from Alaboud. Essentially, Alaboud argues that because § 875(c) requires an objective standard of how a reasonable person would construe the communication, allowing into evidence Blake's subjective interpretation of Alaboud's messages was unduly prejudicial on the jury.

We review evidentiary decisions for abuse of discretion. *United States v. Novaton*, 271 F.3d 968, 992 (11th Cir. 2001). While this Court has not ruled on whether the recipient's reaction to the alleged threatening statements are relevant, every other circuit that has considered it has ruled that evidence of the recipient's reaction is relevant and admissible. *See United States v. Fulmer*, 108 F.3d 1486,

9

1499-1500 (1st Cir. 1997) ("[W]e find that evidence of the recipient's reactions is relevant to that inquiry."); *United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996); *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994) ("In making this determination, proof of the effect of the alleged threat upon the addressee is highly relevant."); *United States v. Roberts* 915 F.2d 889, 890-91 (4th Cir. 1990); *United States v. Schneider* 910 F.2d 1569, 1571 (7th Cir. 1990) ("The fact that the victim acts as if he believed the threat is evidence that he did believe it, and the fact that he believed it is evidence that it could reasonably be believed and therefore that it *is* a threat."); *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990) ("Alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners."). We agree with our sister circuits. The recipient's belief that the statements are a threat is relevant in the inquiry of whether a reasonable person would perceive the statements as a threat.

In this case, Blake's reaction to Alaboud's phone calls was evidence of Blake's belief that Alaboud's communication was a serious threat, and Blake's belief is evidence that Alaboud's communication could reasonably be construed as a threat. Blake's perception and reaction to Alaboud's statements are relevant. The district court did not abuse his discretion by allowing Blake's testimony.

10

## CONCLUSION

The district court made the proper judgment in denying Alaboud's Rule 29 motion as there was sufficient evidence to convict him under § 875(c). The district court also did not err in allowing evidence of Blake's reaction to the threats.

AFFIRMED.