[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13600
Non-Argument Calendar

_____

D. C. Docket No. 04-00435-CR-T-26-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL COURAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 11,2006)

Before MARCUS, WILSON and FAY , Circuit Judges.

PER CURIAM:

Michael Couran appeals his conviction for conspiracy to possess a firearm after a felony conviction, in violation of 18 U.S.C. § 371.[1]  Couran argues that the district court erred in denying his motion for a judgment of acquittal, made pursuant to Fed.R.Crim.P. 29(a),[2] because the government failed to present sufficient evidence to establish that a conspiratorial agreement existed between himself and his co-conspirator, Tedrick Randall (also known as "Teddy Randall"), to possess a firearm.  For the reasons set forth more fully below, we affirm.

A federal grand jury returned a superseding indictment, charging Couran and co-conspirator  Randall with committing the above-referenced conspiracy offense, with the overt act being in possession of a Stevens 12-gauge shotgun while being convicted felons.  In describing the "manner and means" of the conspiracy, this superseding indictment included as follows:

> It was a part of the conspiracy that [Couran and Randall] were involved in a reported home invasion in Bradenton, Florida on April 3, 2004. . . .  It was further a part of the conspiracy that [Couran and

---

[1]  Couran has abandoned by not raising on appeal any challenges to his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  See United States v. Smith, 416 F.3d 1350, 1352 n.1 (11th Cir.) (explaining that the prudential rule of declining to consider issues not timely raised in a party's initial brief is "well-established" in this Circuit), cert. denied, 126 S.Ct. 784 (2005).  Moreover, although Couran sought in the district court a judgment of acquittal based on a variance in the date charged in his superseding indictment and the testimony at trial, he explicitly has waived our review of this argument on appeal.

[2]  Rule 29 provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  See Fed.R.Crim.P. 29(a).

2

Randall] stole a motor vehicle following the reported home invasion. . . . It was further a part of the conspiracy that [Couran and Randall], on April 3, 2004, following the reported home invasion and the theft of the motor vehicle, conspired to possess a firearm. . . ..

During Couran's jury trial, he stipulated that he was a convicted felon. Deputy Jeffrey Bliss, a deputy with the Manatee County Sheriff's Office, also testified, stating that, after spotting a vehicle that had been reported stolen, he stopped the vehicle and ordered the three persons inside of the vehicle to exit it. These three persons were later identified as Couran, who was the front-seat passenger, Randall, who was the driver, and Loucanis Phillips, who was a back-seat passenger.[3] After these men were placed in custody, back-up deputies conducted a cursory search of the vehicle and recovered the unloaded shotgun from between the two front seats.[4] Moreover, after Deputy Bliss advised Couran of his right to remain silent, Couran stated that, although he knew about the shotgun, it was owned by Randall and it had been in the vehicle before Couran.

On the other hand, co-conspirator Randall—who had plead guilty to the conspiracy count and had agreed to testify against Couran in exchange for the

---

[3] Deputy Bliss testified that after Couran and Randall were arrested for possessing the shotgun, Phillips was released and not charged in relation to the shotgun.

[4] A photograph of this shotgun that was introduced into evidence showed that it was found on the front-passenger side of the vehicle, to the right of the console. Michael Gistinger, a Special Agent with the U.S. Justice Department's Bureau of Alcohol, Tobacco, Firearms, and Explosives, also testified that, although 80 to 90 percent of firearms are tested for fingerprints, the shotgun in question was not tested.

government agreeing to dismiss his § 922(g) offense and recommend a minor-role adjustment at sentencing—stated that, during that same evening as their arrest, he drove Couran to a house, where Couran picked up the shotgun. When Couran came back to the vehicle, he placed the shotgun between his legs, barrel up. Randall also testified that (1) the vehicle belonged to his girlfriend,[5] and (2) he never touched the shotgun. Randall and Couran, however, drove around for approximately 30 to 45 minutes, with the shotgun in between them in the vehicle, before Deputy Bliss stopped them. Additionally, Randall conceded that he was a convicted felon.

At the conclusion of the government's evidence, Couran moved for a judgment of acquittal on the conspiracy count, pursuant to Rule 29. Couran argued, among other things, that the government had failed to establish that a conspiratorial agreement existed between himself and Randall because Randall, the only person who testified about this agreement, had stated that Randall "had nothing to do with it." The government responded that Randall's admission that he and Couran had driven around for at least 30 to 45 minutes, with the shotgun sitting in between them in the vehicle, was "an admission of essentially transporting, conspiring with another convicted felon to possess the firearm."

---

[5] At sentencing, the government stated that, although Randall's girlfriend had reported the vehicle stolen, it was not, in fact, stolen.

Agreeing with the government, the district court denied Couran's Rule 29 motion. After Couran exercised his right not to testify, the jury convicted him as charged in his superseding indictment. The district court ultimately sentenced Couran to concurrent sentences of 60 months' imprisonment on the conspiracy offense and to 240 months' imprisonment on the possession offense.

Couran argues on appeal that the district court erred in denying his Rule 29 motion for a judgment of acquittal because, after excluding the unproven facts in his superseding indictment, the government had produced insufficient evidence to establish that he conspired with Randall to possess a firearm as convicted felons. Citing to United States v. Gunn, 369 F.3d 1229 (11th Cir.), cert. denied, 543 U.S. 937 (2004), Couran asserts that knowledge, alone, is insufficient to prove constructive possession. Couran concludes that, assuming as true Randall's testimony, Randall, at most, only was aware that Couran had brought the shotgun into the vehicle and thus, did not enter into a conspiratorial agreement to possess it.

Whether sufficient evidence supports a conviction is a question of law subject to de novo review. United States v. Alaboud, 347 F.3d 1293, 1296 (11th Cir. 2003). "In assessing the sufficiency of the evidence, this Court views the evidence in the light most favorable to the government with all reasonable inferences and credibility choices made in the prosecution's favor." Id. "A jury's

verdict must be sustained against such a challenge if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

In Gunn, the case relied on by Couran, we examined whether sufficient evidence supported three co-conspirators' § 922(g) convictions, where the government explicitly disavowed reliance upon the theory of conspiratorial liability. See Gunn, 369 F.3d at 1234-35. We determined that a reasonable jury could have concluded that two of the co-conspirators—the leader of the conspiracy and a conspirator who played a leadership role and was a passenger in the vehicle containing the firearms—had the power and intention to exercise control over the firearms. See id. at 1235-36. The third co-conspirator, however, was not a "principal player" in the conspiracy, never had met with the undercover agent to plan the robbery, and had arrived at the warehouse containing the drugs in a vehicle without firearms. See id. at 1236. Thus, we concluded that, although the trial evidence showed that this third co-conspirator knew about the firearms, this knowledge was insufficient, alone, to establish that he had actual or constructive possession of them and his § 922(g) conviction had to be vacated. See id.

6

On the other hand, to support a conspiracy conviction, the offense at issue here, the government must establish "(1) an agreement between the defendant and one or more persons, [and] (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." United States v. Pineiro, 389 F.3d 1359, 1368 (11th Cir. 2004) (quotation omitted). In addition to proving that a conspiratorial agreement existed, the government must establish that "the defendant knew of it, and [the] defendant, with knowledge, voluntarily joined it." Id. (quotation omitted).

In proving the requisite knowledge for a conspiracy offense, the government may show knowing participation in the conspiracy through either circumstantial or direct evidence, and it need only prove that the defendant knew of the general nature and scope of the conspiracy. Id. "It is well-settled that the existence of an agreement in a conspiracy case is rarely proven by direct evidence that the conspirators formally entered or reached an agreement. . . . The more common method of proving an agreement is through circumstantial evidence." See id. at 1369 (quotation and internal marks omitted). Thus, we concluded in Pineiro that a reasonable jury could have concluded that the defendant had an illegal agreement with one or more co-conspirators to manufacture marijuana when the government presented evidence showing a close personal relationship between the defendant

7

and a co-conspirator, along with the similarities in "grow houses" operated by the co-conspirators during the same relevant time period. See id. at 1368-69.

In conjunction with clarifying that direct evidence of the conspiratorial agreement is not required, we also have explained that, although "[m]ere presence is insufficient to establish knowing participation in a conspiracy," a conspiracy conviction will be upheld "when the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him." United States v. Molina, No. 04-13114, slip op. at 1756 (11th Cir. March 24, 2006) (quotations omitted). Indeed, "[a]lthough not controlling, presence and association are material and probative factors that a jury may consider in reaching its verdict." United States v. Lluesma, 45 F.3d 408, 410 (11th Cir. 1995). "A jury may infer knowledgeable voluntary participation from presence, when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present." See id. (a reasonable jury could conclude that one of the defendants understood that shipping containers with stolen equipment were being exported to Venezuela when (1) a co-conspirator testified that the co-conspirator had talked to the defendant about a high-level co-conspirator who had made money from exporting

goods; and (2) the warehouse used to store these containers was located in a neighborhood with other import/export businesses).

In the instant case, the evidence in the record includes that Randall never touched the shotgun and that the shotgun was not tested for fingerprints. However, Randall testified that he drove Couran to a house, where Couran had picked up the shotgun. Additionally, Randall testified that he and Couran had driven around for approximately 30 to 45 minutes, with the shotgun in between them in the vehicle, before Deputy Bliss stopped them. Thus, similar to the facts in Pineiro, a reasonable jury could have concluded from the circumstantial evidence that Couran and Randall had an illegal agreement to possess the shotgun. See Pineiro, 389 F.3d at 1368-69. Indeed, a reasonable jury could have inferred Randall's voluntary participation in the possession of the shotgun because "it would [have been] unreasonable for anyone other than a knowledgeable participant to be present." See Lluesma, 45 F.3d at 410.

To the extent Couran is arguing that his conspiracy conviction was not supported by sufficient evidence because the government failed to prove all of the facts charged in his superseding indictment, including that he was part of a conspiracy to commit a home invasion and steal a motor vehicle, the government "need not prove all facts charged in the indictment as long as it proves other facts

9

charged in the indictment which do satisfy the essential elements of the crime."

See United States v. Smith, 231 F.3d 800, 818 n.21 (11th Cir. 2000) (quoting

United States v. England, 480 F.2d 1266, 1269 (5th Cir. 1973)). Furthermore,

although Couran arguably is questioning Randall's credibility due to the fact that

Randall was hoping for a minor-role adjustment in his guideline range, credibility

determinations are for a jury to make. See United States v. Andrews, 953 F.2d

1312, 1318 (11th Cir. 1992). Randall's testimony that he and Couran had driven

around with the shotgun between them in the vehicle also was corroborated by a

photograph of the shotgun, which reflected that it was recovered from the front-

passenger side of the vehicle, to the right of the console. Thus, a reasonable trier

of fact, viewing the evidence in the light most favorable to the government, could

have found, beyond a reasonable doubt, that Couran and Randall knowingly

participated in a conspiracy to possess a firearm as convicted felons. See Alaboud,

347 F.3d at 1296.

Accordingly, we conclude that Couran's § 371 conviction was supported by

sufficient evidence. We, therefore, affirm.

**AFFIRMED.**